UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARTEZ YOUNG and ZAIRE YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:03-CV-454-TS |
| ) | |
| CITY OF FORT WAYNE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

On November 5, 2002, Fort Wayne police executed a search warrant on Zaire Young's apartment, where they suspected drug dealing activity. During the execution of the warrant, the police arrested Zaire and his brother, Martez Young. Subsequent to the arrests, both brothers sued the City of Fort Wayne and the individual police officers involved in the arrests alleging the use of excessive force. The Defendants, the City of Fort Wayne, Detective Raymond Lundberg, Detective Casey Furge, Officer Derrick Westfield, and Officer Albert Davis moved for summary judgment on all claims. The motion has been fully briefed and is ripe for ruling.

**A. Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v.*

*Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed.

R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

**B.  Facts**

Resolving all genuine disputes and drawing all reasonable inferences in the Plaintiffs' favor,

the facts assumed to be true for the purposes of ruling on the Defendants' Motion for Summary Judgment are as follows:

Zaire Young lived in a triplex at 2101 South Calhoun Street in Fort Wayne, Indiana. Fort Wayne Police investigators believed that Zaire's apartment was used for dealing drugs. Accordingly, on October 31, 2002, Detective Steven Espinoza of the City of Fort Wayne Police Department submitted a search warrant affidavit to the Allen Superior Court to search Zaire's dwelling. The court issued a search warrant, which was executed in the evening of November 5, 2002.

That day, around 8:00 p.m., when it was already dark, Martez Young came to visit his brother Zaire. Martez parked his car in front of the building where Zaire lived, left the car running, and went inside. Minutes later, he came out, turned off the car, and started walking back inside. As he was walking, he saw men in black masks and heard yelling. The men were two police officers, Detective Raymond Lundberg and Detective Casey Furge, but Martez did not know that at the time. Since Detective Lundberg and Detective Furge did not identify themselves, Martez became scared and tried to run back into the building. One of the officers grabbed him, called him a crack-head and asked about the drugs. Confused and not knowing what was wanted from him, Martez struggled with the officers. During the struggle, he tore the shirt of one of the officers. Detective Lundberg and Detective Furge (and possibly some other officers) overpowered him. Realizing that he could not escape the officers, Martez gave up resisting. Martez did not realize that they were police officers until they asked more questions about the drugs. Martez did not resist being handcuffed.

After Martez stopped resisting, but before he was put in handcuffs, he was kicked in the ribs and punched in the face. The officers stopped striking Martez once he was in handcuffs. The officers then searched Martez and found a gun in his coat pocket.

4

Martez was transported to St. Joseph's Hospital where he was evaluated. He did not require any treatment and was not prescribed any medications. From the hospital, Martez was taken to jail. Martez injuries consisted of swollen eye and some pain in the ribs. He was released from the jail the following morning and did not seek any follow-up medical treatment. He was fully recovered in about two weeks.

Martez was charged with fleeing police.

While Detectives Lundberg and Furge were detaining Martez, Officer Derrick Westfield and Officer Albert Davis, also wearing masks, went after Zaire inside his apartment. They broke the door, announced themselves, and used a distracting noise devise. Zaire heard them, placed his hands in the air, and laid on the floor on his stomach. The officers immediately handcuffed him and kicked and punched him several times in the head, neck, and back. Zaire did not struggle and, because he was handcuffed in the back, he had no way of protecting himself. The incident lasted ten to fifteen seconds, and Zaire remained on the floor during this entire time.

After being handcuffed, he was pulled up and his head was pushed into the wall. The officers searched him but found nothing on his body. They did find a .357 magnum on the floor, however, which was not Zaire's.

Zaire was then taken to St. Joseph's Hospital where he was evaluated. He required no treatment and was taken to the jail where a nurse put ointment on his face and gave him an ice pack. Zaire's injuries consisted of several knots on his head, a cut lip, a swollen eye, and a bloody nose. He suffered no permanent injuries.

Zaire was charged with possession and distribution of cocaine and possession of a firearm. He pled guilty to the possession charge and received a forty-six month sentence. The sentence was

enhanced because of his possession of a firearm.

Detective Espinoza headed Zaire's investigation and was at Zaire's apartment when the two brothers were arrested; however, he did not personally participate in their arrests. Likewise, Sergeant Kevin Zelt was present at Zaire's arrest but he did not personally participate in the arrest.

While in prison, on April 4, 2003, Zaire filed a *pro se* complaint in the Allen Circuit Court against the Fort Wayne Police Department for violations of his Fourth Amendment rights. He alleged that the arresting police officers acted upon an invalid search warrant and unlawfully seized his personal property. On May 8, the Fort Wayne Police Department removed the case to the federal court, and on June 10, 2003, Judge William C. Lee dismissed Zaire's Fourth Amendment claims and remanded his unlawful seizure claim to the state court.

**C. Discussion**

**(1) *Res Judicata***

The Defendants invoke the doctrine of *res judicata* against Zaire's excessive force claim. They submit that Zaire's April 4, 2003, Complaint against the Fort Wayne Police Department should have included his excessive force claim because it arose out of the same facts and circumstances as his state claims. They insist that Zaire's failure to bring that claim then precludes him from asserting it now.

Zaire argues that his excessive force claim is properly before this Court because the Defendant police officers sued in their individual capacities are different parties and are not in privity with the Fort Wayne Police Department. In their Reply, the Defendants do not address

6

Zaire's arguments.[1]

The doctrine of *res judicata*, when used in a general sense, refers to both issue and claim preclusion:

> The doctrine of res judicata is that a final judgment on the merits in a court of competent jurisdiction bars the same parties or their privies from relitigating not only the issues which were in fact raised and decided but also all other issues which could have been raised in the prior action. . . . The essential elements of the doctrine are generally stated to be: (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits.

*Mandarino v. Pollard*, 718 F.2d 845, 849 (7th Cir. 1983).

Zaire's claims under § 1983 and Indiana Torts Act against the City of Fort Wayne are precluded by *res judicata*. First, Zaire's initial lawsuit against the Fort Wayne Police Department had a final judgment on the merits. Second, Zaire sued the City of Fort Wayne for claims that arose out of the same circumstances alleged in the lawsuit against the Fort Wayne Police Department. Finally, the City of Fort Wayne is the same party as the Fort Wayne Police Department. In Indiana, police departments are administered by safety boards, *see* Ind. Code § 36-8-3-2 ("The safety board of a city shall administer the police and fire departments of the city."), which are created by the cities, *see* Ind. Code § 36-4-9-4 (describing a city's authority to establish departments of safety). Therefore, the Fort Wayne Police department falls completely under the City of Fort Wayne's authority and is not a separate suable entity. *Cf. West By and Through Norris v. Waymire*, 114 F.3d 646, 646–647 (7th Cir. 1997) (discussing the named defendants and noting that "[t]he naming of the Town's Police Department as a defendant adds nothing; it is almost certainly not a suable entity separate from the Town").

---

[1] Neither Zaire nor the Defendants have discussed whether Zaire's Indiana Torts Act claim is precluded by *res judicata*.

However, Zaire's claims against the officers sued in their individual capacities are not barred because they are not the same party as the Fort Wayne Police Department and they are not in privity with it. The Seventh Circuit has recognized that persons sued in their individual capacities are not privy to the governments for which they work as they solely bear the burden of liability and have different defenses than the governmental bodies. *See Conner v. Reinhard*, 847 F.2d 384, 395–96 (7th Cir. 1988) (explaining the reasons why city officials sued in their personal capacities are not in privity with the city).

### 3. *Excessive Force*

(a) *Section 1983 standard*

Martez and Zaire bring their excessive force claims under 42 U.S.C. § 1983. This section is not a source of substantive rights but instead provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 749 n.9 (1999). To prevail on a claim under § 1983, a plaintiff must show that "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *J.H. Exrel. Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003) (citing *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996)).

A plaintiff may bring a § 1983 suit against individual officers in either their official or individual capacity or both. In this case, the Plaintiffs are suing the Defendants in their individual capacities. In order to establish such a claim under § 1983, the Plaintiff must show that the Defendants were personally involved in depriving him of his constitutional rights. *See Walker v.*

*Taylorville Corr. Ctr.*, 129 F.3d 410, 413 (7th Cir. 1997); *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997) (quoting *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994)).

A primary defense to a claim under § 1983 is qualified immunity. Qualified immunity shields officers from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sullivan v. Ramirez*, 360 F.3d 692, 696 (7th Cir. 2004) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[T]he inquiry focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question." *Delaney v. DeTella*, 256 F.3d 679, 686 (7th Cir. 2001). Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

"[P]laintiff bears burden of showing existence of allegedly clearly established constitutional right." *Clash v. Beatty*, 77 F.3d 1045, 1047 (7th Cir. 1996). Since qualified immunity gives public officials the benefit of the doubt, this burden is a difficult one. *See Kernats*, 35 F.3d at 1176; *Elliott v. Thomas*, 937 F.2d 338, 341 (7th Cir. 1991). The Seventh Circuit has developed a two-part inquiry for determining whether the qualified immunity defense applies: "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994).

There is not dispute that the Defendants acted under the color of state law. Therefore, in addressing the Plaintiff's § 1983 claims, the Court must decide only whether the Defendants deprived the Plaintiff of a right secured by the Constitution and laws of the United States, and if so, whether the protected right was clearly established at the time of the events in question.

(b) *Defendants Detective Espinoza and Sergeant Zelt*

Martez and Zaire concede that Defendants Detective Espinoza and Sergeant Zelt were not personally involved in the use of force against either Martez or Zaire, and that summary judgment may be granted in their favor on the Plaintiffs' § 1983 claims.

(a) *Defendants Detective Lundberg, Detective Furge, Officer Westfield, and Officer Davis*

Martez and Zaire believe that Defendants Detective Lundberg, Detective Furge, Officer Westfield, and Officer Davis used excessive force when arresting them. All claims that police officers used excessive force during an arrest are subject to Fourth Amendment objective reasonableness test. *Graham v. Connor*, 490 U.S. 386, 395 (1989). To decide whether the amount of force used was excessive, the court must "examine the totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government interests at stake." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000).

> The Fourth Amendment test is an objective one, where the officer's subjective good or bad intentions do not enter into the analysis. Instead, we consider factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." We also consider whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties. In the end, the excessive force inquiry "looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended."

*Id.* (citations omitted).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly

evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. The Supreme Court has emphasized that "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Under the Constitution, the right question is how things appeared to objectively reasonable officers at the time of the events, *not* how they appear in the courtroom to a cross-section of the civilian community." *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003).

A genuine issue of fact exists whether Officer Westfield and Officer Davis used excessive force against Zaire. In a nutshell, contrary to Officer Westfield and Officer Davis, Zaire maintains that as soon as he heard the officers barge into his apartment, he put his hands in the air and then laid down on the floor on his stomach. According to him, he did not resist the officers, and they immediately handcuffed him. Once his hands were cuffed behind his back, and while he was still laying on the floor, either Officer Westfield or Officer Davis, or both, kicked him and punched him in the head, neck, and back. As a result of these attacks, Zaire had several knots on his head, a cut lip, a swollen eye, and a bloody nose.

In their Reply, the Defendants do not even attempt to argue that, under these facts, no excessive force was used. The Court, in turn, believes that if these facts were proven, a reasonable jury could find that Officer Westfield's and Officer Davis's actions constituted excessive force. Zaire cooperated and posed no danger, especially once he was laying on the floor in handcuffs behind his back. Zaire did not provoke the officers to hit him; therefore any kicking and punching in the head, neck, and back would be excessive. Even mindful of the fact that Zaire was being arrested for dealing drugs, a reasonable jury could find that the alleged beating under circumstances was excessive.

Similarly, a genuine issue of material fact exists as to whether Detective Lundberg and Detective Furge used excessive force against Martez. According to Martez, Detective Lundberg and Detective Furge, who were wearing black masks, did not identify themselves as being police officers. Rather, in the dark of night, they grabbed him and attempted to restrain him. Martez resisted until he figured out from the content of the questions being asked that these men were police officers. However, Detective Lundberg and Detective Furge continued hitting Martez until he was handcuffed and fully restrained.

Under these facts, if a reasonable jury believed Martez, they could find in his favor. Having not announced themselves, Detective Lundberg and Detective Furge provoked Martez's resistance when they grabbed him in an attempt to detain him. While ordinarily such resistance would have justified increased use of force against an unrestrained Martez, even if he momentarily stopped fighting back, under these facts, the officers themselves were the cause of his struggle. Accordingly, having set in motion a confrontation, they may not now claim that their force was reasonable to end this confrontation. *Cf. Payne v. Pauley*, 337 F.3d 767, 777 (7th Cir. 2003) ("It would be inherently unfair if an officer could rile up a crowd by mistreating a citizen in front of the crowd, and then could arrest that citizen for creating the disturbance.").

Having decided that, under the facts alleged by Zaire and Martez, a reasonable jury could find that Detective Lundberg, Detective Furge, Officer Westfield, and Officer Davis used excessive force, the Court must determine whether these officers are protected by qualified immunity; that is, whether the protected rights were clearly established at the time of Zaire's and Martez's arrests. Zaire and Martez can overcome the qualified immunity defense by pointing out "a closely analogous case that established that [they] had a constitutional right to be free from the type of force the police

12

officers used on [them]," *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993), or by showing "that the force used was so plainly excessive that the police officers should have been on notice that they were violating the Fourth Amendment." *Id*.

Zaire has not presented any closely analogous cases establishing that kicking and punching a handcuffed, nonresisting suspect constitutes excessive force. Nevertheless, he has successfully shown that such force was so plainly excessive under the circumstances that the police officers should have been on notice that they were violating the Fourth Amendment. *Cf. Phelps v. City of Indianapolis*, 2004 WL 1146489, *12 (S.D. Ind. 2004) ("[K]nee strikes on handcuffed, immobilized and unresisting arrestees would be excessive under the Fourth Amendment."). Zaire's allegations are that, after he was handcuffed and lying on his stomach, for a period of ten to fifteen seconds, the officers kicked and punched him several times in the head, neck and back without any provocation. These attacks resulted in several knots on his head, a swollen eye, a cut lip, and bloody nose. Under these facts, Officer Westfield and Officer Davis are not protected by qualified immunity for they should have known that their actions violated the Fourth Amendment. *Cf. Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995) ("The Constitution clearly does not allow police officers to force a handcuffed, passive suspect into a squad car by breaking his ribs.").

Similarly, viewing facts taken in light most favorable to Martez, the Court finds no qualified immunity protection for Detective Lundberg and Detective Furge. Not knowing who the men in masks were, Martez reasonably resisted the officers. This resistance, of course, cost him a beating. The officers' failure to identify themselves created the necessity to use force. Martez's capture was in the open, and once Martez saw the officers, there was no need for them to hide their identities. *Cf. Marshall ex rel. Gossens v. Teske*, 284 F.3d 765, 772 (7th Cir. 2002) ("Because the officers did

not sufficiently identify themselves, a prudent person in their position would not have cause to believe that [the plaintiff] was knowingly resisting or obstructing."); *Deering v. Reich*, 183 F.3d 645, 651 (7th Cir. 1999) ("If a fleeing felon is converted to a 'threatening' fleeing felon solely based on the actions of a police officer, the police should not increase the degree of intrusiveness. In other words, we have no countervailing governmental interest in unreasonable police conduct that would justify a greater intrusion on the individual's rights.").

### 4.  *Indiana Torts Act*

Both Zaire and Martez assert claims under the Indiana Torts Act. The Defendants have not addressed those claims in their motion for summary judgment. Accordingly, these claims may be presented at trial. However, Zaire's claim under the Indiana Torts Act is not viable in so far as *res judicata* precludes him from suing the City of Fort Wayne.

### CONCLUSION

Because Detective Espinoza and Sergeant Zelt were not personally involved in the arrests of Zaire or Martez, the Court GRANTS summary judgment to them. Moreover, the Court GRANTS summary judgment to the City of Fort Wayne as to Zaire's claims, because any such claims are precluded by the doctrine of *res judicata*.

The Court DENIES summary judgment to Detective Lundberg and Detective Furge as to Martez's claims, and denies summary judgment to Officer Westfield and Officer Davis as to Zaire's claims. In addition, the Court DENIES summary judgment to the City of Fort Wayne as to Martez's claims.

SO ORDERED on September 27, 2005.


　　　　　　　　　　　　　　　　　　　　S/ Theresa L. Springmann
　　　　　　　　　　　　　　　　　　THERESA L. SPRINGMANN
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT